b

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| CRAIG JALBERT, Plaintiff | CIVIL DOCKET NO. 1:23-CV-00505 |
| VERSUS | DISTRICT JUDGE DOUGHTY |
| RAYMOND JAMES & ASSOCIATES, INC., Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

REPORT AND RECOMMENDATION

Before the Court is a Motion to Remand filed by Plaintiff Craig Jalbert ("Jalbert") in his capacity as the Chapter 11 liquidating trustee ("Trustee") for German Pellets Louisiana, L.L.C. ("GPLA") & Louisiana Pellets, Inc ("LP"). ECF No. 17.

Because Defendants have shown Jalbert was in bad faith, and their removal is timely, Jalbert's Motion to Remand (ECF No. 17) should be DENIED.

I. Background

Jalbert the Trustee for the GPLA and LP Litigation Trust formed by the Joint Chapter 11 Plan of Liquidation,[1] which was confirmed in 2017. ECF No. 1-1 at 5. All

---

[1] A chapter 11 plan of reorganization or liquidation settles the estate's causes of action or retains those causes of action for enforcement by the debtor, the trustee, or a representative of the estate appointed for the purpose of enforcing the retained claims. *See* 11 U.S.C. § 1123(b)(3); *see also Torch Liquidating Trust ex rel. Bridge Associates L.L.C. v. Stockstill*, 561 F.3d 377, 387 (5th Cir. 2009).

To achieve the plan's goals, the retained assets of the estate may be transferred to a liquidating trust. *See* 11 U.S.C. § 1123(a)(5)(B); *see also Torch Liquidating Trust ex rel.*

causes of action were transferred to the Trust, to be pursued by the Trustee, Jalbert. ECF No. 1-1 at 5; *In re: Louisiana Pellets, Inc. and German Pellets, Louisiana, L.L.C.*, No. 16-80162 (W.B. La.).

The Trustee initially filed this suit in the Louisiana 28th Judicial District Court in LaSalle Parish in February 2018, on behalf of German Pellets Louisiana, L.L.C. ("GPLA") and Louisiana Pellets, Inc. ("LP"), against Peter Leibold, Anna Kathrin Leibold, Michael Leibold (collectively, "the Leibolds"), Meranda Hyman ("Hyman"), German Pellets Holding USA, Inc. ("GPH USA"), Continentale Sacherversicherung AG ("Continentale"), and VOV GmbH ("VOV"). *See Jalbert v. Leibold*, 18-CV-00788, ECF No. 1-1 (W.D. La.), ECF No. 1-1 at 6; *Jalbert v. Leibold*, 19-CV-01069, ECF No. 1-1 at 1; No. 1-1 at 87 (W.D. La).[2]

---

*Bridge Associates L.L.C.*, 561 F.3d at 387. Section 1123 allows a plan to transfer to a trustee of a liquidating trust the authority to enforce an estate's claims for breach of fiduciary duties owed to the corporation and to distribute the proceeds of successful suits. *See Torch Liquidating Trust ex rel. Bridge Associates L.L.C.,* 561 F.3d at 387.

[2] The Leibolds were four officers and directors of LP and GPLA. ECF No. 1-1. The Leibolds are all citizens of the Federal Republic of Germany and were the principals who controlled both Louisiana Pellets and GPLA. ECF No. 1-1. The Leibolds each provided misleading and false information for the Limited Offering Memoranda. ECF No. 1-1 at 7-8.

Hyman was an "accountant" employed by GPLA and LP. Continentale was the primary underwriter of the D&O insurance for GPLA and LP. VOV sold the D&O policy to GPLA and LP.

Raymond James sold the bonds to raise funding to build the Urania facility. Those bonds are now completely worthless. Longo and Sattar are two Raymond James bankers who personally participated in the bond transactions. ECF No. 1-1 at 3-4.

The Complaint alleges that GPLA and LP failed because the Leibolds and their associated companies failed to contribute equity to the project to construct the Urania facility and

It was removed by insurer VOV, which asserted jurisdiction pursuant to 9 U.S.C. §§ 203, 205; 28 U.S.C. § 1334; and 28 U.S.C. § 1332. The Trustee's Motion to Remand was granted because: all Defendants did not consent to removal; the action does not "relate to" the arbitration agreement in the VOV policy; and abstention was

---

diverted tens of millions of dollars that should have been invested in the Urania facility to other entities controlled by the Leibolds. ECF No. 1-1 at 4.

The Complaint further alleges that each of the Limited Offering Memoranda for the five bond issues represented, falsely, that: (1) proceeds from the sale of bonds would be used solely to pay for the construction of the Urania facility and costs related to the bonds; and (2) about $72 million in equity had been invested in LP and GPLA. However, construction funds were diverted to the Leibolds or their controlled entities, and equity contributions were either never made or were almost immediately looted. ECF No. 1-1 at 4. The Leibolds and Hyman caused GPLA to pay over large amounts to several companies that did not actually provide any goods or services to GPLA or LP. ECF No. 1-1 at 25-26.

The Trustee asserts the Leibolds and Raymond James knew that: (1) LP and GPLA were certain to fail if required equity was not contributed and if bond proceeds were diverted; (2) the promised equity contributions were never made; and (3) tens of millions of dollars of bond proceeds were directed to the Leibolds' entities. ECF No. 1-1 at 4. The Leibolds then engaged in elaborate fictitious transfers to create bogus documentation of equity contributions. That "cover-up" delayed the discovery of the acts and omissions at issue. ECF No. 1-1 at 4. LP and GPLA failed, and their creditors lost about $300,000,000.

The Trustee asserted claims against the Leibolds and Hyman for: breach fiduciary and other legal duties by looting money from LP and GPLA and participating in securities fraud; negligence; gross negligence; waste; and conversion against the Leibolds and Hyman. And the Trustee contended the Leibolds conspired to commit fraud.

Against German Pellets Holding, the Trustee asserted claims of waste, conversion, and breach of fiduciary duty (as the sole member of GPLA). The Trustee asserted a direct action against Continentale and VOV as a D&O insurer for the Leibolds, Hyman, and German Pellets Holdings.

Finally, the Trustee contends Raymond James, Longo, and Sattar breached their duties under the Louisiana Securities Act by selling more than $395 million of bonds on the basis of material misrepresentations and omissions as to the funds invested in LP and GPLA. ECF No. 1-1 at 4. Alternatively, the Trustee alleges the liability of Raymond James, Longo, and Sattar under the Florida Securities and Investor Protection Act.

mandatory pursuant to 28 U.S.C. § 1334(c)(2). ECF No. 42. The case was returned to the state court in 2019. ECF No. 44.

While in state court on remand, the Trustee filed a First Amending Complaint in June 2019, adding Raymond James & Associates, Inc. ("Raymond James"), George Longo ("Longo"), and Danyal Sattar ("Sattar") as Defendants. ECF No. 29-6. The Trustee alleged violations of the Louisiana Securities Act, La. R.S. 51:712(A)(2) and, alternatively, of the Florida Securities and Investor Protection Act, F.S.A. §§ 517.301(a)(2) and 517.211, for material misrepresentations and omissions in the Limited Offering Memoranda supporting the sale of bonds to finance LP's and GPLA's Urania facility ("the Equity Contribution Cover-Up"). ECF No. 29-6 at 34-37, 40-43; ECF No. 1-1 at 31-34, 37-39.

Raymond James, Longo, and Sattar then removed the case in August 2019 (second removal), asserting diversity jurisdiction and misjoinder. *Jalbert v. Leibold,* No. 19-cv-01069 (W.D. La.), ECF No. 1. Defendants filed a motion to dismiss Hyman pursuant to the theory of "egregious misjoinder"[3] and, alternatively, a motion to sever the claims against them from the claims against all other named Defendants. ECF Nos. 27, 35. The Trustee filed a motion to remand. ECF No. 20. In 2020, Defendants' motions were denied, and the Trustee's motion to remand was granted. ECF No. 54.

---

[3] *See Tapscott v. MS Dealer Services Corp.*, 77 F.3d 1353 (11th Cir. 1996). At the time of removal, the egregious misjoinder theory of *Tapscott* had been impliedly rejected by the Fifth Circuit. *Tapscott* was later expressly rejected in *Williams v. Homeland Insurance Co. of New York,* 18 F.4th 806, 814-15 (5th Cir. 2021).

On January 12, 2021, in the United States Bankruptcy Court for the Western District of Louisiana, Lafayette Division, the Trustee settled with VOV, releasing all claims against the Leibolds, German Pellets Holding, and Continentale. ECF No. 17-12; *In re: Louisiana Pellets, Inc. and German Pellets, Louisiana, L.L.C.,* No. 16-80162 (W.B. La.), ECF No. 867.

On April 18, 2023 (at 11:17 a.m.), the state court granted a motion for summary judgment in favor of Hyman, dismissing the Trustee's claims. ECF No. 1-2 at 2. On Hyman's motion, her reconventional demands and crossclaims[4] were also dismissed the same day. ECF No. 1-7 at 2; No. 29-12.

Also on April 18, 2023 (at 2:08 p.m.), Defendants again removed the case asserting diversity.[5] ECF No. 1. The only Defendants remaining in the case are Raymond James, Longo, and Sattar.

The Trustee filed a Motion to Remand. ECF No. 17. Defendants oppose that Motion. ECF No. 29.

---

[4] Although Hyman's reconventional demands and crossclaims against Jalbert, G P GmbH, V O V GmbH, and the Leibolds were dismissed by the state court on April 18, 2023, the docket does not show they have been terminated.

[5] Longo is a citizen of Colorado. Sattar is a citizen of Minnesota. Raymond James is a Florida corporation with its principal place of business in Florida.

The Trustee claims that, as a bankruptcy trustee, he has the citizenship of both LP and GPLA, which he contends is Louisiana and Delaware. ECF No. 1-1 at 5. Defendants contend that, because the bankruptcy had been confirmed, the Trustee must use his own citizenship, which is Massachusetts. Because diversity exists regardless of which rule is used, that issue is moot.

## II.   Law and Analysis

The Trustee contends that Defendants' removal is untimely because it occurred more than one year past the commencement of the action and, therefore, remand is warranted pursuant to 28 U.S.C. § 1446(c)(1).  This action commenced in state court on February 16, 2018.  ECF No. 1 at 3; *Jalbert v. Leibold*, No. 1:23-00505 (W.D. La.), ECF No. 1-1.  Raymond James, Longo, and Sattar were added as Defendants in 2019.  *See Jalbert v. Leibold,* No. 1:19-cv-1069 (W.D. La.), ECF No. 1-1 at 102.  This current (third) removal occurred in April 2023.  ECF No. 1.

Defendants contend the Trustee added Hyman as a Defendant in bad faith for the sole purpose of defeating federal jurisdiction.  Therefore, the 30-day period in which to remove accrued on the date of the order dismissing the Trustee's claims against Hyman, pursuant to 28 U.S.C. § 1446(c)(1), instead of on the date the action commenced.

### A.   The effect of bad faith on the time limit for removal.

The federal removal statute generally permits a defendant to remove any civil action to federal court that falls within the original jurisdiction of the district courts. *See* 28 U.S.C. § 1441(a).  Diversity jurisdiction under 28 U.S.C. § 1332(a) provides district courts with original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000 ... and is between ... citizens of different States."  28 U.S.C. § 1332(a)(1).  Jurisdiction under this statute requires complete diversity, meaning that no plaintiff can be a citizen of the same state as any

defendant. *See Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 814 (5th Cir. 1993), *cert. den.,* 510 U.S. 868 (1993).

This case was not originally removable because Hyman, a citizen of Louisiana, was a nondiverse defendant. If a state court action is not initially removable, but later becomes removable—with the dismissal of the non-diverse defendant, for instance—a defendant may remove within 30 days of receiving notice that the case has become removable. *See* 28 U.S.C. § 1446(b)(3). But if it has been more than one year since the commencement of the action, the case may only be removed if "the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c)(1); *see also Consolidated Grain & Barge, Inc. v. Anny*, 2014 WL 1364736, at *4 (E.D. La. 2014).

Under both Louisiana and federal law, an action commences when it is filed. *See New York Life Insurance Co. v. Deshotel,* 142 F.3d 873, 885 (5th Cir. 1998) (citing La. C.C.P. art. 421; Fed. R. Civ. P. 3). This action, which was not initially removable, was commenced in state court in February 2018. Because the 2023 removal occurred after the one-year time limit, Defendants must show: (1) that the Trustee acted in bad faith to prevent removal; and (2) that the case was removed timely pursuant to § 1446(b)(3).

### B. The evidence indicates the Trustee acted in bad faith to prevent removal.

To prove bad faith, Defendants contend Jalbert "minimally engaged with his claims against Hyman," pointing to the fact that the Trustee testified at his deposition that he did not know specifically what Hyman had done, but that she had been sued as an officer of the corporation. Essentially, the Trustee was attempting to recover some money for the creditors under LP's and GPLA's "Directors and Officers" ("D&O") insurance policy by alleging the individual Defendants had breached their fiduciary duties, as directors and officers, to LP and GPLA.

"[T]he determination of bad faith is left to the discretion of the district court, but 'the exception to the bar of removal after one year is limited in scope.'" *Rantz v. Shield Coat, Inc.*, 2017 WL 3188415, at *5 (E.D. La. 2017) (citing *Bryson v. Wells Fargo Bank, N.A.*, 2016 WL 1305846, at *4 (E.D. Tex. 2016)). "The Court will construe the removal statute strictly and resolve any ambiguity in favor of remand." *Antie v. McBain,* 2021 WL 4244554, *2 (W.D. La. 2021), *report and recommendation adopted,* 2021 WL 4239303 (W.D. La. 2021) (citing *Manguno v. Prudential Property & Casualty Insurance Co.*, 276 F. 3d 720, 723 (5th Cir. 2002)).

The removing defendant must show that plaintiff acted in bad faith to prevent removal. *See Rantz*, 2017 WL 3188415, at *5 (citing *De Aguilar v. Boeing Company*, 47 F.3d 1404, 1408 (5th Cir. 1995), *cert. den.*, 516 U.S. 865 (1995)). "[T]he Fifth Circuit has not expounded upon what 'bad faith' means, other than to say that "the

question is what motivated the plaintiff *in the past*—that is, whether the plaintiff's litigation conduct meant 'to prevent a defendant from removing the action.'" *Hoyt v. Lane Construction Corporation,* 927 F.3d 287, 293 (5th Cir. 2019) (quoting § 1446(c)(1)). "[C]ourts within the Fifth Circuit generally focus on whether or not the removing party demonstrates conduct by the plaintiff amounting to a manipulation of the removal statute." *Antie*, 2021 WL 4244554, at *2 (citing *Rantz*, 2017 WL 3188415 at * 5); *see also Levias v. State Farm Mutual Automobile Insurance Co.*, 2022 WL 3081199, at *3 (W.D. La. 2022), *report and recommendation adopted,* 2022 WL 3050393 (W.D. La. 2022); *Roberson v. Respironics, Inc.*, 2021 WL 2179265, at *3 (N.D. Miss. 2021); *Flores v. Intex Recreation Corp.*, 2020 WL 6385679, at *2 (S.D. Tex. 2020).

A finding of bad faith requires a "transparent attempt to circumvent federal jurisdiction." *H&E Equipment Services, Inc. v. URS Corporation Architecture, P.C.*, 2018 WL 7625357, at *3 (M.D. La. 2018), *report and recommendation adopted*, 2019 WL 1421158 (M.D. La. 2019) (citing *Williams v. Mor-Tem Risk Management Services, Inc.*, 2012 WL 1014752, at *5 (W.D. La. 2012)); *see also James v. Whitney*, 2021 WL 3044149, at *2 (W.D. La. 2021); *Levias*, 2022 WL 3081199, at *3. "The central question is 'whether the plaintiff's litigation conduct [was] meant 'to prevent a defendant from removing the action.'" *Reliance Property Management, Inc. v. Central Mutual Insurance Co.*, 2020 WL 13504715, at *2 (N.D. Tex. 2020) (citing *Hoyt*, 927 F.3d at 293).

9

"In general[,] a determination of bad faith is subject to a high burden, and courts are reluctant to find a party acted in bad faith without clear and convincing proof." *Roberson*, 2021 WL 2179265, at *3 (examining four factors–plaintiff's knowledge, plaintiff's pursuit of the claim, the timing of the dismissal, and consideration for the dismissal–in determining whether Plaintiff was in bad faith). "'[B]ad faith' requires looking for willfully obstructive behavior on the plaintiff's part." *Brueckner v. The Hertz Corporation*, 2023 WL 7130865, at *3 (S.D. Tex. 2023) (report and recommendation).

"Courts often look to 'the way plaintiffs pursued the claims against the non-diverse defendant.'" *Estate of Ross v. Eldridge*, 2022 WL 17096997, at *4 (S.D. Miss. 2022) (quoting *Roberson*, 2021 WL 2179265, at *3). "The fact-intensive nature of the bad faith inquiry is a qualitative, not quantitative, endeavor." *Manuel v. Patterson*, 2021 WL 4452800, at *2 n. 1 (E.D. La. 2021). Other indicators of bad faith found by the courts in this circuit have been: failing to serve the non-diverse defendant with process, *David-Lange v. Safeco Insurance Co. of Indiana*, 2021 WL 5278721, at *3-*4 (N.D. Tex. 2021); neglecting to seek a default judgment, *Flores*, 2020 WL 6385679, at *3; only minimally pursuing the claim against the forum defendant, *Hoyt*, 927 F.3d at 292; dismissal of plaintiff's claim against the forum defendant shortly after the one-year deadline expires, *Hoyt*, 927 F.3d at 292; the witness list for trial did not include any fact witnesses from the forum-defendant, *Hoyt*, 927 F.3d at 292; failure to use experts against a nondiverse defendant, *Hoyt*, 927 F.3d at 292; and

concealment of a settlement agreement with a forum defendant, *Reliance Property Management, Inc.*, 2020 WL 13504715, at *4.[6]

The Trustee alleged in his Complaint that Hyman was the Chief Accounting Officer for GPLA and LP and, in that capacity, processed and caused invoices to be paid by GPLA and transferred funds on behalf of GPLA. ECF No. 1-1 at 8; No. 29-3 at 8. Hyman, a resident of Louisiana, was the only non-diverse Defendant.

Hyman has steadfastly maintained that she was only a "senior accountant," not an officer or director. In January 2018 Hyman inquired whether she was covered by the D&O policy. In a letter dated August 1, 2018, VOV's representatives notified Hyman's counsel that Hyman was not covered by the D&O policy issued to German Pellets GmbH for GPLA and LP. VOV denied coverage of Hyman's defense costs, finding she was neither a member of management nor an executive employee of GPLA or LP. VOV pointed to Hyman's answer to the Complaint, in which she averred that she was not a director, officer, or shareholder of GPLA, and had no authority to approve or make payments on behalf of GPLA. *See Jalbert v. Leibold*, No. 18-cv-00788, ECF No. 13-3.

---

[6] In *H&E Equipment Services, Inc.*, 2019 WL 1421158, at *2, the Middle District of Louisiana noted the "bad faith test" devised by the district court in *Aguayo v. AMCO Insurance Co.*, 59 F. Supp. 3d 1225, 1283 (D.N.M. 2014): (1) did the plaintiff actively litigate against the forum defendant in the state court; and (2) would the plaintiff not have named the forum defendant, or would the plaintiff have dropped the forum defendant before the one-year mark, but for plaintiff's desire to avoid federal jurisdiction.

11

In July 2018, Hyman filed her first unverified statement (ECF No. 17-21), stating that she was hired by LP/GPLA as an "accountant" on March 11, 2015, to work in the wood pellet plant in Urania, Louisiana, and that she had never been an officer, director, or shareholder of those companies. ECF No. 17-21; No. 29-17. Hyman stated that her job was to collect the invoices and forward them to Germany, and management then told her which vendor invoices to pay. ECF No. 17-21; No. 29-17. Hyman's February 2023 affidavit shows she was not an officer of either LP or GPLA, her title was "Senior Accountant," "employed to maintain financial records of operations [or] the Urania facility] of the company," and that she was employed there for only seven months. ECF No. 29-4.

The Trustee–an accountant, not an attorney (ECF No. 1-5 at 36)–testified at his deposition that he had no personal knowledge as to the allegations against Hyman that were made in the Complaint. ECF NO. 1-5 at 36. The Trustee testified that "[i]n no case" had he "ever been involved in writing a complaint." ECF No. 1-5 at 36. He said this case was investigated and the Complaint was written by his staff and his attorneys. ECF No. 1-5 at 35-36. The Trustee stated that Hyman had been sued because she was an officer of the bankrupt companies.

Jalbert is the Plaintiff in this action and the liquidating Trustee for LP and GPLA. He and his attorneys failed to build a case against Hyman in the 5 years leading up to the summary dismissal of the action against Hyman. The Trustee did not find evidence of wrongdoing by Hyman. Most pertinent is the fact that the

Complaint does not allege that Hyman participated in the conspiracy to commit fraud with the Leibolds.

Hyman was not an officer or manager of LP or GPLA, regardless of her title, a fact which could have been discovered as early as 2018. Despite the Trustee's previous legal arguments that Hyman was an officer within the meaning of the D&O policy,[7] Hyman steadfastly denied being anything more than an "accountant." The Trustee had the means to determine from the D&O insurers whether Hyman was an officer or director covered by the D&O policy, but did not do so.

Moreover, the Trustee settled with VOV in January 2021, and released all claims against VOV and the Leibolds, but reserved his claims against Hyman and the Raymond James Defendants. ECF No. 17-12 at 14. At that point, it must have been clear to the Trustee that Hyman was not an officer or director of the companies and was not insured under the D&O policy. Nor had the Trustee found evidence of wrongdoing by Hyman.[8] Therefore, there was no reason to maintain the action against her except to prevent removal of the case. ECF No. 17-12; *In re: Louisiana Pellets, Inc. and German Pellets, Louisiana, L.L.C.,* No. 16-80162 (W.B. La.), ECF

---

[7] *See Jalbert v. Leibold,* No. 1:19-01069 (W.D. La.), ECF Nos. 20, 21.

[8] In April 2023, the state court found the Trustee had no evidence to support his claims against Hyman. ECF No. 29-1 at 29-30.

13

No. 867. The Trustee should have dismissed the action against Hyman at the same time he released his claims against the Leibolds.[9]

Other factors tending to show the Trustee's bad faith are: Hyman was not deposed; her activities were not evaluated by Plaintiff's expert witness; she was served with only 2 interrogatories and nine requests for production (ECF No. 1-1 at 14); and Plaintiff listed her only as a "may call" witness for trial (ECF No. 1-6 at 2-3).

Finally, prior to his February 2023 deposition, the Trustee did not bother to familiarize himself with his own case against the Defendants. ECF No. 1-3. The Trustee's repetitive response to many of the questions–that he "did not recall" anything about the Defendants, LP's and GPLA's financial statements, the evidence, or the settlements, because his attorneys handled everything–is indicative, at the least, of willfully obstructive behavior.

Thus the evidence of the Trustee's bad faith–only minimally pursuing the claims against Hyman; failing to investigate the evidence as to Hyman; failing to include Hyman in his "will-call" witness list; failing to use an expert to evaluate Hyman's action; and failing to apprise himself as to the case against Hyman prior to his deposition–all indicate the Trustee was misusing the removal statute by leaving Hyman in the case as a Defendant.

---

[9] Defendants further contend that the Trustee, through his counsel, admitted that Hyman was in the case to keep it out of federal court. However, that was not stated directly as alleged by Defendants. Instead, it was implied in what was clearly a moment of jocularity between the Trustee's counsel and the judge before counsel explained why Hyman was a Defendant. ECF No. 29-1 at 22.

14

C.   The action was properly removed pursuant to § 1446(b)(3).

Defendants' next burden is to show that removal was timely and proper pursuant to § 1446(b)(3):

> Except at provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order, or other paper from which it may first be ascertained that the case is one which is or has become removable.

1.   The Voluntary-Involuntary Rule

"Removability under §§ 1441 and 1446 is subject to a judge-made exception: '[W]here the case is not removable because of joinder of defendants,' *only* 'the voluntary dismissal or nonsuit by [the plaintiff] of a party or of parties defendant' can convert a nonremovable case into a removable one." *Hoyt*, 927 F.3d at 295 (quoting *Great Northern Railway Co. v. Alexander*, 246 U.S. 276, 281 (1918)).  The Fifth Circuit has "described this 'judicially-created voluntary-involuntary rule' as providing 'an action nonremovable when commenced may become removable thereafter only by the voluntary act of the plaintiff.'" *Hoyt*, 927 F.3d at 295 (quoting *Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 532 (5th Cir. 2006), *cert. den.,* 546 U.S. 907 (2006)).

Defendants rely on the state court orders of April 18, 2023, dismissing the Trustee's action against Hyman and Hyman's crossclaims and reconventional

demands.[10]  ECF No. 1-2 at 2; No. 1-7 at 2; No. 29-12.  Those orders created complete diversity between the parties.

However, because Hyman was dismissed pursuant to a contested motion for summary judgment (and her crossclaims and reconventional demands were dismissed pursuant to her own motion), those orders are not the "voluntary dismissal or nonsuit by the plaintiff or a party defendant" that could convert this action into a removal suit.  "Numerous courts . . . have held that an order not resulting from agreement or voluntary action by the plaintiff is not the sort of order contemplated by the second paragraph of section 1446(b)."  *Nexbank, SSB v. BAC Home Loan Servicing, L.P.*, 2011 WL 5182118, at *8 (N.D. Tex. 2011) (holding a state court order granting Defendants' motion for summary judgment was not an "order" under § 1446(b)).

### 2. <u>Hyman was improperly joined at the time of removal.</u>

Of course there is an exception to the exception.  "The judicially created voluntary-involuntary rule is *itself* subject to a judicially created exception for improper joinder."  *Hoyt*, 927 F.3d at 295 (citing *Great Northern Railway Co.*, 246 U.S. at 282). When the non-diverse defendant was improperly joined, "the voluntary-

---

[10] The Trustee argues there were "other" papers that triggered the 30-day period earlier than April 18, 2023.  ECF No. 17-1 at 27.  However, the papers cited by the Trustee were only evidence of his "bad faith" under § 1446(c)(1).  That does not fulfill the separate requirement for timely filing under § 1446(b)(3).

16

involuntary rule is inapplicable." *Hoyt*, 927 F.3d at 295 (quoting *Crockett*, 436 F.3d at 532).

Thus, Defendants again argue that Hyman was "improperly joined," pointing to the state court's April 18, 2023 summary judgment in her favor.

A defendant may establish improper joinder in two ways: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Smallwood v. Illinois Central Railroad Co.*, 385 F.3d 568, 573 (5th Cir. 2004), *cert. den.,* 544 U.S. 992 (2005) (quoting *Travis v. Irby*, 326 F.3d 644, 646–47 (5th Cir. 2003)); *see also Advanced Indicator & Manufacturing, Inc. v. Acadia Insurance Co.*, 50 F.4th 469, 473 (5th Cir. 2022). Only the second method of proving improper joinder is at issue here.

To show that a plaintiff cannot establish a cause of action against the non-diverse party in state court, a defendant must show "that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Id.* "Importantly, 'to determine whether a plaintiff has improperly joined a non-diverse defendant, the district court must examine the plaintiff's possibility of recovery against that defendant *at the time of removal.*'" *Advanced Indicator & Manufacturing, Inc.*, 50 F.4th at 473 (quoting *Flagg*, 819 F.3d at 137).

17

In *Hoyt,* the Texas plaintiffs sued three defendants, two of whom were Texas residents and one of whom was not, in state court. *See Advanced Indicator & Manufacturing, Inc.*, 50 F.4th at 474 (citing *Hoyt,* 927 F.3d at 291). The plaintiffs voluntarily dismissed one in-state defendant, and the state court granted another in-state defendant's motion for summary judgment. *Id.* (citing *Hoyt,* 927 F.3d at 292). The out-of-state defendants then removed to federal court. *Id.* The plaintiffs moved to remand the case to state court, arguing (as relevant here) that the state-court's grant of an in-state defendant's motion for summary judgment could not serve as the basis for removal because it violated the voluntary-involuntary rule. *Id.* On appeal, the United States Fifth Circuit Court of Appeals held that the in-state defendant who was dismissed pursuant to summary judgment was improperly joined, as clearly demonstrated by the state court's grant of summary judgment. *Id.* (citing *Hoyt,* 927 F.3d at 296–97). The Fifth Circuit further held that because improper joinder is an exception to the voluntary-involuntary rule, that rule did not bar removal in that case. *Id.* The Fifth Circuit emphasized that, as it had stated in *Flagg*, 819 F.3d at 137, because "jurisdictional facts are determined at the time of removal, . . . to determine whether a plaintiff has improperly joined a non-diverse defendant, the district court must examine the plaintiff's possibility of recovery against that defendant *at the time of removal.*" *Advanced Indicator & Manufacturing, Inc.*, 50 F.4th at 474.

18

In this case, the state court dismissed the Trustee's action against Hyman because he had no evidence to support the allegations in his Complaint concerning Hyman, and he had never deposed her in the five years since filing the suit. ECF No. 29-1 at 29-30. Thus, at the time of removal, there was no possibility of recovery by the Trustee against the only forum Defendant, Hyman.

Because Hyman was improperly joined at the time of removal, the voluntary-involuntary rule does not apply in this case. And because Defendants removed the same day that Hyman was dismissed from the action and her claims were dismissed, the removal is timely pursuant to § 1446(b)(3).

### III. Conclusion

Based on the foregoing, IT IS RECOMMENDED that Jalbert's Motion to Remand (ECF No. 17) be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this __3rd__ day of January 2024.

Joseph H.L. Perez-Montes
United States Magistrate Judge