# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA
# ALEXANDRIA DIVISION

| | |
|---|---|
| **CRAIG JALBERT, IN HIS CAPACITY AS THE CHAPTER 11 LIQUIDATING TRUSTEE FOR GERMAN PELLETS LOUISIANA, LLC AND LOUISIANA PELLETS, INC.,** ) ) ) ) ) ) | |
| **Plaintiff,** ) ) | |
| VS. ) ) ) | **CIVIL ACTION NO. 1:23-CV-00505** **Judge Jerry Edwards, Jr.** |
| **RAYMOND JAMES & ASSOCIATES, INC., GEORGE LONGO, AND DANYAL SATTAR,** ) ) ) ) | **Magistrate Judge Joseph H.L. Perez-Montes** |
| **Defendants.** ) ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY AND EVIDENCE OF J. LESTER ALEXANDER, III

## **TABLE OF CONTENTS**

BACKGROUND ........................................................................................................................... 1

LEGAL STANDARD.................................................................................................................... 3

ARGUMENT .................................................................................................................................. 4

I.   Alexander's Report Is Unreliable Because It Is Based Upon an Untrustworthy and Unverified GPLA Ledger. ................................................................................................... 4

II.  Alexander Should Be Precluded from Opining on Due Diligence Because He Lacks Expertise in This Field. ...................................................................................................... 9

CONCLUSION............................................................................................................................. 12

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                                                     Page(s)

*Basco v. Spiegel*,
   No. CIV.A. 08-0468, 2009 WL 3850618 (W.D. La. Sept. 2, 2009)..........................................3

*Carter as Next Friend for Carter v. City of Shreveport*,
   No. CV 17-1289, 2023 WL 2775464 (W.D. La. Apr. 4, 2023)................................................10

*Conday v. Offshore Drilling Co.*,
   No. CV 07-0882, 2010 WL 11575031 (W.D. La. Jan. 5, 2010).................................................4

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579 (1993)...............................................................................................................3, 6, 11

*Desmond as Tr. for Est. of Yellow CAB Affiliation, Inc. v. Taxi Affiliation Servs. LLC*,
   No. 17 C 8326, 2022 WL 7102614 (N.D. Ill. Oct. 12, 2022)..................................................6, 7

*E.Z. Aces Gaming Inc. v. Penn-Am. Ins. Co.*,
   643 F. Supp. 3d 620 (W.D. La. 2022).........................................................................................3

*Guy v. Crown Equip. Corp.*,
   394 F.3d 320 (5th Cir. 2004) ......................................................................................................3

*JRL Enters., Inc. v. Procorp Assocs., Inc.*,
   No. 01-2893, 2003 WL 21284020 (E.D. La. June 3, 2003).......................................................6

*Knight v. Kirby Inland Marine Inc.*,
   482 F.3d 347 (5th Cir. 2007) ..................................................................................................3, 4

*Moore v. Ashland Chem. Inc.*,
   151 F.3d 269 (5th Cir. 1998) ...............................................................................................10, 11

*N.S. v. City of Alexandria*,
   919 F. Supp. 2d 773 (W.D. La. 2013).........................................................................................6

*Pipitone v. Biomatrix, Inc.*,
   288 F.3d 239 (5th Cir. 2002) ......................................................................................................3

*Robroy Indus.-Texas, LLC v. Thomas & Betts Corp.*,
   No. 2:15-CV-512-WCB, 2017 WL 1319553 (E.D. Tex. Apr. 10, 2017) ...................................8

*In re: Taxotere (Docetaxel) Prods. Liab. Litig.*,
   26 F.4th 256 (5th Cir. 2022) .......................................................................................................6

*United States v. McMillan*,
    600 F.3d 434 (5th Cir. 2010) ..................................................................................................10

**Other Authorities**

Federal Rule of Evidence 403 ...................................................................................................... 4

Federal Rule of Evidence 702 ....................................................................................... 3, 4, 6, 9, 11

Defendants Raymond James & Associates, Inc. ("Raymond James"), George Longo, and Danyal Sattar (collectively, "Defendants") respectfully submit this Memorandum in Support of their Motion to Exclude Expert Testimony and Evidence offered by Plaintiff's expert J. Lester Alexander, III ("Mr. Alexander"). Mr. Alexander's Expert Report dated February 20, 2023 (the "Report", attached as **Exhibit 1**)[1] is flawed in two respects: (1) it relies upon financial documentation that is plainly unreliable, namely, the ledger of German Pellets Louisiana, LLC ("GPLA"), and (2) it impermissibly exceeds the scope of Mr. Alexander's expertise as an accountant by opining on the reasonableness of Raymond James's due diligence as the initial purchaser. These deficiencies violate the principles set forth in Federal Rule of Evidence 702 and, accordingly, those portions of Mr. Alexander's Report and any testimony related to these issues should be excluded from trial to prevent jury confusion and unfair prejudice to Defendants.

## BACKGROUND

Raymond James served as the initial purchaser of bonds issued by the Louisiana Public Facilities Authority to finance the construction of a wood pellet manufacturing plant in Urania, Louisiana (the "Project"). Raymond James sold those bonds to a number of institutional investors. After the Project failed and GPLA and Louisiana Pellets, Inc. ("LPI") filed for bankruptcy, some of those institutional investors purported to assign to Plaintiff the alleged claims against Defendants (the "Assigning Bondholders").

The Assigning Bondholders, through Plaintiff, allege that Defendants violated the Louisiana Securities Act by purportedly making certain material misstatements and/or omissions in Limited Offering Memoranda ("LOM") provided to bondholders in connection with their purchases of bonds in 2013, 2014, and 2015. The claims against Defendants are tethered to

---

[1] On January 7, 2025, Plaintiff adopted the Report, which was originally produced in the state court matter, as an expert report in the current proceeding.

1

Plaintiff's core theory that Defendants knew or should have known that certain equity contributions set forth in the LOMs as being made to the Project either were not made or were immediately "looted" for the benefit of Peter and Anna Leibold (collectively, the "Leibolds"), who were executive officers of GPLA's ultimate parent company German Pellets GmbH and LPI, respectively.[2]

One of Plaintiff's two disclosed experts is Mr. Alexander. Mr. Alexander's Report purports to opine on five issues: (1) whether the equity contributions were made as stated in the LOMs, and as part of that he also opines on whether such contributions were detectable by Raymond James; (2) whether the Project could operate as a going concern, to the extent the equity contributions were not made; (3) the amounts received by Raymond James in connection with its role as initial purchaser of the bonds; (4) the alleged losses the Assigning Bondholders suffered as a result of the alleged misstatements; and (5) a critique of the Expert Report of Defendants' expert, Gary Kleinrichert. (**Exhibit 1**, Report at ¶¶ 3, 10–11.) Mr. Alexander's opinions as to the first issue are unreliable and irrelevant and should be excluded for at least two reasons.

First, in assessing whether the equity contributions were made and whether such contributions were detectable by Raymond James, the Report relies, without any independent verification, upon a ledger of questionable origin that contains unreliable and inconsistent entries. (*Id.* at 4, 10–11.) Second, the Report flatly concludes that Defendants "should have compared the amounts contained in the equity certificate to the general ledgers of the Louisiana Entities," without any reference to authority or analysis and notwithstanding that Mr. Alexander is unqualified to provide such an opinion outside the scope of his area of expertise. (*Id.* at ¶ 11.)

---

[2] *See, e.g.,* **Exhibit 2**, Second Amended Petition ("SAP") ¶¶ 7, 19, 21, 70, 79, 85, 98, 111, 114, 194.

2

These deficiencies render those portions of the Report unreliable, and thus, Mr. Alexander's opinions on those matters would confuse the jury rather than assist them and cause substantial prejudice to Defendants. As such, the Court should exclude the portions of the Report and testimony that rely on unreliable sources and that are outside the scope of Mr. Alexander's area of expertise.

## **LEGAL STANDARD**

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the standards enunciated in *Daubert* and its progeny. *See Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004) ("Amended Rule 702 reflects the Supreme Court's decisions in *Daubert* and its progeny emphasizing the district courts' broad latitude in weighing the reliability of expert testimony for admissibility."); *E.Z. Aces Gaming Inc. v. Penn-Am. Ins. Co.*, 643 F. Supp. 3d 620, 624 (W.D. La. 2022) (observing that the trial court's "gatekeeping function extends to all expert testimony, whether scientific or not") (citing *Kumho Tire Co., Ltd., v. Carmichael*, 526 U.S. 137, 147 (1999)).

Under the *Daubert* standard, "[t]he trial court serves as gatekeeper" to ensure that the expert's opinion is not only relevant, but reliable. *Id.* (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)). In its gatekeeping role, the district court enjoys "broad latitude" in determining who should or should not be permitted to testify as an expert and whether the expert testimony is admissible. *See id.* (citing *Guy*, 394 F.3d at 325). Ultimately, the district court must determine whether the testimony has "a 'reliable basis in knowledge and experience of the relevant discipline.'" *Basco v. Spiegel*, No. CIV.A. 08-0468, 2009 WL 3850618, at *3 (W.D. La. Sept. 2, 2009) (quoting *Daubert*, 509 U.S. at 592).

Expert evidence is only relevant where it "assist[s] the trier of fact to understand the evidence or to determine a fact in issue." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 245 (5th Cir.

3

2002) (quoting *Daubert*, 509 U.S. at 591). Whether expert evidence is relevant "depends upon 'whether [that] reasoning or methodology properly can be applied to the facts in issue.'" *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007) (alteration in original) (quoting *Daubert*, 509 U.S. at 593). Reliability, on the other hand, "is determined by assessing 'whether the reasoning or methodology underlying the testimony is scientifically valid.'" *Id.* (quoting *Daubert*, 509 U.S. at 592–93). "The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, *et alia*." *Id.* at 355 (quoting *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 155 (3d Cir. 1999)). Even if the expert testimony satisfies both the reliability and relevance standards, the Court must consider whether the testimony should be excluded pursuant to Federal Rule of Evidence 403 if "the potentially unfair prejudicial effect substantially outweighs the probative value of the proposed testimony." *Conday v. Offshore Drilling Co.*, No. CV 07-0882, 2010 WL 11575031, at *4 (W.D. La. Jan. 5, 2010).

**ARGUMENT**

**I.     Alexander's Report Is Unreliable Because It Is Based Upon an Untrustworthy and Unverified GPLA Ledger.**

Mr. Alexander bases his conclusions about equity contributions on the ledger of GPLA, which discovery has revealed to be an inherently unreliable source. Because the Report does not meet the standards of Federal Rule of Evidence 702 or the requirements of *Daubert*, testimony and evidence based on the GPLA ledger in the Report should be excluded from trial.

The only witness to offer any testimony as to the reliability of the GPLA ledger is Norman Dittmar, the former CFO of German Pellets Holdings and GPLA. (**Exhibit 3**, Deposition of Norman Dittmar ("Dittmar Dep.") at 15:4–14.) Importantly, Mr. Dittmar was not even employed by German Pellets Holdings, GPLA, or any other related entity (the "German Pellets entities")

4

until July 2014, more than *six months* after the first equity contributions were represented to have been made and *20 months* after the first entry in the ledger. (*Id.* at 20:20–22.) Mr. Dittmar could not say with certainty who had access to the GPLA ledger or who was able to enter or modify information in the ledger. (*See id.* at 39:3–21.)

Mr. Dittmar also conceded that the GPLA ledger *does not* include every transaction related to the Project and that additional money may have been contributed by the parent entities. (*See id.* at 119:7–10, 128:5–23.) Indeed, Mr. Dittmar acknowledged that he lacked the banking and accounting records to know whether and in what amount contributions from the parent companies were made. Consistent with this admission, Mr. Dittmar expounded upon the inherent unreliability of the GPLA ledger to determine what was paid on behalf of GPLA:

> I don't really recall how much exactly German Pellets GmbH paid on behalf of GPLA because usually there was a lot—there were transactions going back and forth so most of the time GPLA would pay vendors directly but sometimes GP GmbH, the parent company, would pay vendors on behalf of GPLA and sometimes they would get reimbursed the exact amount, sometimes they would get reimbursed a different amount, sometimes they didn't get reimbursed anything. *So there is a very wild back and forth of money flowing between GPLA and GP GmbH and it is, even for me, I would say almost impossible to say exactly, you know, to make a determination of what was paid on behalf of what and what was really related to what and what was exactly reimbursed and what wasn't*.

(**Exhibit 4**, Exhibit 44 to Dittmar Dep. at 26:6–22 (emphasis added).)

Even the reliability of Mr. Dittmar's truthfulness and knowledge of the pertinent matters in this case were called into question by another of Plaintiff's identified witnesses, Chip Cummins, who was appointed Chief Restructuring Officer of LPI and GPLA following their bankruptcy. (*See* **Exhibit 5**, Deposition of Chip Cummins of RPA Advisors at 18:16–19:15 (stating that Dittmar was "somewhat generally trustworthy to the extent he could [be]" and that he was "in way over his head" and that he may not have "had the skills or ability to do what he was being asked to do").) In fact, during Mr. Dittmar's deposition in this matter, he conceded that, although he and

5

other GPLA accountants provided documentation to GPLA's auditor that $20,096,376.68 in equity was transferred to GPLA, he could not confirm that that was correct. (**Exhibit 3**, Dittmar Dep. at 112:5–114:22.) Later in the deposition, however, he seemed to indicate that the roughly $20 million equity contribution was in fact made, as was the roughly $37 million equity contribution, which Plaintiff alleges was not paid. (*Id.* at 121:7–123:4.) Thus, it is unclear from his testimony what Mr. Dittmar knew then or knows now that could inform Mr. Alexander as to the integrity of the GPLA ledger upon which he relies to reach his conclusions in the Report.

The Federal Rules of Evidence prohibit an expert from providing testimony if such testimony is not "based on sufficient facts or data." Fed. R. Evid. 702(b). "The object of Rule 702 is to protect juries from unreliable and irrelevant expert testimony." *In re: Taxotere (Docetaxel) Prods. Liab. Litig.*, 26 F.4th 256, 268 (5th Cir. 2022). Indeed, under the standards set forth in *Daubert*, a district court is required to perform a gatekeeping function to "ensure that 'any and all scientific testimony or evidence admitted is not only relevant, but [also] reliable.'" *N.S. v. City of Alexandria*, 919 F. Supp. 2d 773, 785 (W.D. La. 2013) (alteration in original) (quoting *Daubert*, 509 U.S. at 589).

Federal courts applying the *Daubert* standard have excluded expert testimony and evidence as irrelevant and unreliable when the documents underlying an expert's opinion were not independently verified or where the data is so unreliable that it raises questions as to the expert's methodology. *See, e.g.*, *JRL Enters., Inc. v. Procorp Assocs., Inc.*, No. 01-2893, 2003 WL 21284020, at *8 (E.D. La. June 3, 2003); *Desmond as Tr. for Est. of Yellow CAB Affiliation, Inc. v. Taxi Affiliation Servs. LLC*, No. 17 C 8326, 2022 WL 7102614, at *1 (N.D. Ill. Oct. 12, 2022).

In *JRL Enterprises*, for instance, the plaintiff's expert relied upon a report prepared entirely by the plaintiff's vice president of sales for purposes of calculating damages and conducted no

6

independent analysis of those figures. *JRL Ents*, 2003 WL 21284020, at *5. In finding that the plaintiff failed to adequately demonstrate the relevance and reliability of the expert's report, the court observed that the expert "merely accepted as true the facts given to him by [the plaintiff.]" *Id.* at *8.

Similarly, in *Desmond*, the plaintiff's expert sought to offer an opinion on the historical insolvency of an entity, which opinion he based upon the financial records of that entity that the plaintiff itself argued were "purposefully commingled" and "deliberately muddled." *Desmond*, 2022 WL 7102614, at *1. The court held that, because the plaintiff's theory itself was that the underlying data was not reliable, the approach raised "methodology issues." *Id.*

These cases are instructive here, where Mr. Alexander bases his conclusions on the unreliable ledger of GPLA. (**Exhibit 1**, Report at ¶¶ 4, 9–11 (identifying the Louisiana Entities' ledgers and German Pellets GmbH's ledger as information Mr. Alexander consulted in creating his Report).) Despite the acknowledged deficiency in the GPLA ledger and the foundational problems as to admissibility of the ledger entries as proof of whether payments were made as represented, Mr. Alexander's Report blindly relies on the GPLA ledger, along with the ledgers of other German Pellets entities, "from inception through February 2016" to perform his analysis of the equity contributions. (*Id.* at ¶¶ 4, 9.) The Report does not acknowledge that the GPLA ledger is, or even could be, incomplete or otherwise unreliable, or that the authorship of certain entries on the GPLA ledger is unclear. Nor does the Report make any attempt to substantiate the GPLA ledger through review of any other financial documentation, such as bank transfer records or other internal or external documents. Instead, Mr. Alexander's Report merely accepts as true the entries on the GPLA ledger provided to him by Plaintiff in asserting that equity contributions were not made as stated in the LOMs—a conclusion that cannot be reached with any degree of confidence

7

given the uncertainty clouding the GPLA ledger's origins.  This is made even more perplexing when considered alongside Plaintiff's theory of the case—*that a massive, undetected fraud was perpetrated by several members of a complex corporate structure over the course of several years*—yet he completely ignores that theory and improperly presumes that the GPLA ledger is ironclad and infallible.  (*See, e.g.*, **Exhibit 2**, SAP ¶ 6 (alleging that equity contributions were either not made or were "almost immediately looted"), ¶ 8 (alleging that the Leibolds and "related persons" looted "tens of millions of dollars").)

For these reasons, Mr. Alexander's opinions and testimony based on the GPLA ledger would undoubtedly confuse the jury and would substantially prejudice Defendants, as the GPLA ledger lacks a reliable foundation or independent verification and amounts to little more than a summary of Plaintiff's theory of the case.  *See Robroy Indus.-Texas, LLC v. Thomas & Betts Corp.*, No. 2:15-CV-512-WCB, 2017 WL 1319553, at *9 (E.D. Tex. Apr. 10, 2017) (collecting cases for the proposition that the use of experts "was not intended to abolish the hearsay rule and to allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion").

Accordingly, because Mr. Alexander's Report improperly relies upon inherently unreliable data, which he did not independently verify regarding the business transactions of entities that Plaintiff himself questions, the Court should exclude the portions of the Report and testimony that rely upon the GPLA ledger.[3]

---

[3] Mr. Dittmar further explained that the auditors used the GPLA ledger in conducting their audit. (**Exhibit 3**, Dittmar Dep. at 110:10–114:15.)  Thus, to the extent Mr. Alexander drew any further conclusions using those audited financials, those conclusions and any related testimony are unreliable and should likewise be excluded.

## II. Alexander Should Be Precluded from Opining on Due Diligence Because He Lacks Expertise in This Field.

Though Mr. Alexander possesses the qualifications to testify as to the majority of the opinions in his Report, his expertise does not extend indefinitely, and Mr. Alexander should not be permitted to opine on topics outside of the scope of his expertise. In particular, Mr. Alexander is not qualified to offer an opinion regarding the sufficiency of Defendants' due diligence or their statutory duties as an initial purchaser.

In summary fashion, Mr. Alexander's opinion concludes that Defendants "***should have*** compared the amounts contained in the equity certificate to the general ledgers of the Louisiana Entities" and Defendants "failed to verify the accuracy of the representations made in the equity contribution certificates submitted by IPBG." (**Exhibit 1**, Report at ¶¶ 10–11 (emphasis added) (the "diligence opinion")). Yet, this opinion goes to the heart of Defendants' statutory obligations as an initial purchaser, including the scope of its due diligence obligations. The Court should strike this diligence opinion from Mr. Alexander's report and disallow any testimony by Mr. Alexander related to Defendants' diligence or the statutory standards imposed on initial purchasers because he is not qualified to opine in this area. Indeed, Plaintiff has engaged another expert to opine on this topic.

***First***, simply put, Mr. Alexander does not have the requisite expertise to draw this conclusion. An expert is only permitted to give opinion testimony where his "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Mr. Alexander's diligence opinion would not aid the factfinder because he lacks the expertise to draw such a conclusion.

9

Mr. Alexander is a Certified Public Accountant[4] and does not have accreditations, securities licenses, experience, or expertise in initial purchasers' due diligence standard. While Mr. Alexander may be qualified to give opinions related to his expertise as a CPA, he is not qualified to proffer opinions as to the standard of care applicable to municipal initial purchasers and whether Defendants met that standard.[5] Mr. Alexander acknowledges that he was retained to provide accounting and valuation analysis; he was ***not*** retained to opine on the sufficiency of Defendants' due diligence. (*See* **Exhibit 1**, Report at ¶ 3 (describing the scope of Mr. Alexander's engagement).)

The district court has a gatekeeping obligation to ensure that an expert is "properly qualified" to provide his opinion. *See United States v. McMillan*, 600 F.3d 434, 456 (5th Cir. 2010). Where an expert lacks the qualifications to render certain opinions, it is appropriate for the Court to limit the expert's testimony to those opinions he is qualified to give. *See, e.g.*, *Carter as Next Friend for Carter v. City of Shreveport*, No. CV 17-1289, 2023 WL 2775464, at *3 (W.D. La. Apr. 4, 2023) (excluding medical doctor's expert testimony regarding treatment of pressure ulcers where he conceded that he was not an expert in that area). Mr. Alexander is an accountant;

---

[4] Mr. Alexander's full list of accreditations include: Certified Public Accountant (CPA), Certified in Financial Forensics (CFF), Accredited in Business Valuation (ABV), Certified Fraud Examiner (CFE), and Chartered Global Management Accountant (CGMA). (**Exhibit 1**, Report at Appendix 9, p. 5.)

[5] Though Mr. Alexander states he has some experience in "pre-acquisition due diligence," this appears to be related to business valuation issues, ***not*** initial purchaser due diligence. (Compare **Exhibit 1**, Report at ¶ 2 ("I have specialized training and extensive experience with performing pre-acquisition due diligence, cash flow analysis, business valuation, damages measurement and enterprise risk management.") with *id*. at Appendix 9, p. 2 ("Conducted due diligence for lenders in connection with mezzanine transactions and cash flow lending transactions"); *id*. at Appendix 9, p. 3 ("Testified regarding customary due diligence responsibilities of sellers and buyers in the banking industry").) Mr. Alexander's curriculum vitae does mention underwriters, but only in connection with a valuation. (*Id*. at Appendix 9, p. 3 ("Valued managing general agencies and managing general underwriter agencies in connection with a variety of disputes").)

10

he is not a project finance investment banker, has never been one, and has never been licensed to be one. As such, his opinions concerning due diligence are not based on any relevant qualifications or experience. Mr. Alexander therefore lacks the requisite expertise to provide the jury with an opinion as to the sufficiency of Defendants' due diligence.

***Second***, even if Mr. Alexander had the appropriate expertise, the diligence opinion is not based on any facts, data, or other guidance, which renders Mr. Alexander's opinion on it unreliable. An expert is only permitted to testify to opinions that are "based on sufficient facts or data." Fed. R. Evid. 702(b). Mr. Alexander's diligence opinion contains no citation to the record, documents, or testimony Mr. Alexander reviewed concerning due diligence. (**Exhibit 1**, Report at ¶ 11.) It does not contain a reference to a single statute, regulation, or treatise concerning due diligence. (*Id.*) Indeed, it contains no citation whatsoever. (*Id.*)

An expert's testimony must "assist the trier of fact to **understand the evidence** or to determine a fact in issue." *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 275 (5th Cir. 1998) (emphasis added) (quoting *Daubert*, 509 U.S. at 589–90). Mr. Alexander's diligence opinion cannot help the trier of fact understand the evidence when it transparently is not based on any evidence or any facts. Nor could Mr. Alexander have done so, where he did not review Raymond James' due diligence processes or procedures or the diligence process undertaken for these bond issuances. (*See* **Exhibit 1**, Report at ¶ 4.) Because Mr. Alexander lacks both expertise and evidence that would support it, the Court should prohibit Mr. Alexander from testifying as to the diligence opinion in his Report.

11

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that this Court exclude Mr. Alexander's Report and testimony at trial relating to (1) the GPLA ledger and (2) the diligence opinion.

Dated: March 31, 2025.

Respectfully submitted,

By:   /s/ Bradley L. Drell
      Edward E. Rundell (La. Bar 11539)
      Bradley L. Drell (La. Bar 24387)
      GOLD WEEMS BRUSER SUES & RUNDELL
      P.O. Box 6118
      2001 MacArthur Dr.
      Alexandria, Louisiana 71307-6118
      Phone: (318) 445-6471
      Email: erundell@goldweems.com
             bdrell@goldweems.com

      /s/ Michael A. Brady
      Michael A. Brady (*pro hac vice*)
      BASS BERRY & SIMS, PLC
      100 Peabody Pl., Ste. 1300
      Memphis, Tennessee 38103
      (901) 543-5701
      mbrady@bassberry.com

      Overton Thompson III (*pro hac vice*)
      Allison Wiseman Acker (*pro hac vice*)
      Elaina S. Al-Nimri (*pro hac vice*)
      BASS BERRY & SIMS, PLC
      21 Platform Way South, Suite 3500
      Nashville, Tennessee 37203
      (615) 742-7896
      othompson@bassberry.com
      allison.acker@bassberry.com
      eal-nimri@bassberry.com

      *Attorneys for Raymond James & Associates, Inc., George Longo, and Danyal Sattar*

**CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that on March 31, 2025, a copy of the foregoing was filed electronically using the Court's CM/ECF system, thereby automatically effecting electronic mail service upon all parties through their counsel of record.

                                                           */s/ Michael A. Brady*
                                                           Michael A. Brady